STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                                    FOURTH JUDICIAL DISTRICT

---

|  |  |
|---|---|
| Monica Martinson, | Court File No.: _____ <br> Case Type: Employment (7) |
| Plaintiff, |  |
| vs. | **SUMMONS** |
| ABM Parking Services, Inc., |  |
| Defendant. |  |

---

**THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANT:**

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:
   BAILLON THOME JOZWIAK & WANTA, LLP
   222 South Ninth Street, Suite 2955
   Minneapolis, MN 55402
   (612) 252-3570

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not

1

get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

BAILLON THOME JOZWIAK
& WANTA LLP

_/s/_____          DATED 3/6/14
Joni M. Thome, #232087
Christopher D. Jozwiak, #386797
Matthew S. Nolan, #390132
222 South Ninth Street, Suite 2955
Minneapolis, MN 55402
Telephone: 612.252.3570
Facsimile: 612.252.3571

*Attorneys for Plaintiff*

2

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Monica Martinson, | Court File No.: _____ <br> Case Type: Employment (7) |
| Plaintiff, | |
| vs. | **COMPLAINT AND** <br> **JURY DEMAND** |
| ABM Parking Services, Inc., | |
| Defendant. | |

The Plaintiff, Monica Martinson, for her Complaint against Defendant, states and alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff resides in the City of Cottage Grove, State of Minnesota.

2. Defendant ABM Parking Services, Inc. ("ABM") is a parking facility management company who conducts business in the City of Minneapolis, County of Hennepin, State of Minnesota.

3. At all relevant times, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of the Minnesota Human Rights Act ("MHRA"), Minnesota Statute § 363A.03.

4. Plaintiff brings this action pursuant to the MHRA, Minnesota Statutes §§ 363A.01 *et seq.*, to remedy injuries she has suffered and will continue to suffer as a result of Defendant's discrimination on the basis of age, discrimination on the basis of disability and/or perceived disability and retaliation in violation of the MHRA.

5. Jurisdiction and venue are proper in the County of Hennepin, State of Minnesota, as Defendant resides and conducts business in the County of Hennepin, State of Minnesota.

## FACTS

6. Plaintiff began working for Defendant in March 1974.

7. Plaintiff held many jobs throughout her 38-year career with Defendant. Most recently, she worked as payroll and administrative clerk in the human resources department.

8. Plaintiff routinely received positive feedback from management and was recognition for her good performance during her employment.

9. In September 2010, Plaintiff suffered a stroke. She returned to work full-time in early 2011 and immediately noticed adverse treatment toward her from management, including the removal of job duties such as billing and collections. Plaintiff confronted Jim Horski, who was general manager at the time, as to why he was removing job duties, and was told "I have been noticing that since you got back from your stroke, your memory is not that good." Plaintiff knew this was not true and asked for examples. Horski gave no examples but said other employees were noticing it, too. Upset by this, Plaintiff asked several coworkers whether they had noticed any changes in her memory or work, and no one had had noticed any changes.

10. In August 2011, Plaintiff also began to notice that management was treating her and other older employees differently because of age. Around this time, Plaintiff learned that all salaried employees in her office were given a $2,000.00 performance-related bonus, except for her and Sharilyn Haggenmiller, who were both in their early-60s at the time, and three other auditing employees over the age of 50. Even two younger employees who had

2

been with Defendant only six months received $500.00 bonuses. After learning this, Plaintiff complained to Horski that this was "discrimination" because of their years of experience. Horski dismissed the complaint and said it was the Metropolitan Airports Commission ("MAC") that made the decision, not him. Again, this was untrue, as Plaintiff knew that bonuses originated from the general manager. After Horski failed to take action, Plaintiff escalated her complaint of discrimination to the Regional Director of Human Resources Deborah Horvath and Regional Vice President Brian Bush. Nothing was done to address her complaint. Rather, more job duties were taken away from Plaintiff.

11.     In September 2012, Plaintiff learned that Laurie Parks, an employee more than 10 years her junior, would be taking over many of her payroll duties, even though Parks had no payroll duties previously. Two months later, she learned that Patty Ruff, also more than 10 years younger, was becoming Parks payroll back-up, even though Ruff had absolutely no previous experience doing payroll.

12.     By early 2013, management had removed all payroll duties from Plaintiff, and left her doing little more than administrative assistant duties in human resources. When Plaintiff asked Greg Frankhauser, the new general manager, to explain why nearly all her job duties had been taken away, he told her that corporate headquarters had directed the change. Again, this was untrue—it was common knowledge that the general manager directed job assignment decisions, not Bush or corporate management. When she inquired into what duties she was now supposed to perform, Frankhauser told her to talk to Beth Sandeberg in human resources. Plaintiff asked, "Do I have to be afraid that I will lose my job?" Frankhauser replied, "No, you will never have to worry about that." When Plaintiff asked Sandeberg about her job, Sandeberg failed to provide any explanation as to why duties were being

removed or what Plaintiff's job duties actually were now that so many had been taken away from her.

13. In mid-May 2013, Frankhauser, asked Plaintiff whether she "was considering retirement." Plaintiff (age 64) was shocked by the question, as she had never discussed retiring and had no plans to do so and told Frankhauser she could not afford to retire. Frankhauser pressed her: "I really think you should retire—you owe that to yourself." Again, Plaintiff told Frankhauser she could not retire for financial reasons. As she left his office, Frankhauser told her to "think about it."

14. Plaintiff was the oldest employee in the office. Frankhauser and others in management also knew that Plaintiff had multiple sclerosis because she had previously disclosed to them that she had lifting restrictions as a result of the multiple sclerosis.

15. Haggenmiller (age 63) was the second oldest employee in the office and was the oldest in the accounting department.

16. On June 4, 2013, Frankhauser and Sandeberg met with Plaintiff and told her they were laying her off for "business" reasons.

17. Frankhauser and Sandeberg had terminated Haggenmiller the day before, also claiming that Haggenmiller had been laid off for "business" reasons.

18. No other employee was terminated in this purported layoff other than Plaintiff and Haggenmiller.

19. When Plaintiff pressed Frankhauser as to why she had been selected, Frankhauser responded that an audit by the Metropolitan Airport Commission ("MAC") determined that she had to be terminated.

20. Similarly, in her termination meeting, Haggenmiller asked Frankhauser why she had been chosen and not one of her coworkers. Haggenmiller's two younger workers, Margaret Jacobowski (age 51) and Berhanu Aeromo (age 53), had no known health issues or workers compensation injuries. Jacobowski had worked for Defendant for only three years; Aeromo was part-time and had been with Defendant six years.

21. Frankhauser responded that Haggenmiller had been chosen because of the MAC audit, which purportedly concluded that someone in auditing had to be terminated, so Haggenmiller was selected. Haggenmiller later learned that the audit had actually concluded that the auditing department was performing well.

22. Shortly after her termination, Plaintiff learned that she had been replaced by Parks, who was more than 10 years her junior.

23. Haggenmiller learned that she had been replaced by Jacobowski.

24. As a directed and proximate result of Defendant's actions and inactions, as herein above alleged, Plaintiff has suffered, and will continue to suffer, loss of income and benefits, humiliation, embarrassment, mental and emotional distress, and other pain and suffering.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION
## OF THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

25. Defendant engaged in unlawful employment practices involving Plaintiff based upon her age in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 *et seq.* These practices include, but are not limited to, Defendant's discharge of Plaintiff from her employment and replacing her with a younger, less experienced employee.

26. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

27. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice or with reckless indifference to anti-discrimination laws that protect Plaintiff.

28. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation and embarrassment, loss of reputation, loss of enjoyment of life, lost wages and benefits, has incurred attorney's fees and expenses and other serious damages.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff incorporates and realleges each and every paragraph of this Complaint.

29. Defendant, through its managers and officials acting on behalf of Defendant, and within the scope of their employment, engaged in unlawful employment practices in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 *et seq.* These practices include, but are not limited to, terminating Plaintiff and altering the terms and conditions of her employment because Plaintiff suffered from an impairment which materially limited one or more major life activities, or because Defendant regarded Plaintiff as suffering from such an impairment.

30. Defendant failed to take all reasonable steps to prevent discrimination based upon Plaintiff's disability or perceived disability.

31. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because she suffered from a disability, or was regarded as suffering from a disability.

32. The unlawful employment practices complained of above were intentional and Defendant performed them with malice and/or reckless indifference to the anti-discrimination laws that protect Plaintiff.

33. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer economic harm, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT III
## REPRISAL IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff incorporates and realleges each and every paragraph of this Complaint.

34. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful retaliation against Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A3.01 *et seq.*, after Plaintiff objected to being treated differently because of her age, reported having a disability, and otherwise asserted her rights under the MHRA.

35. Defendant failed to take all reasonable steps to prevent retaliation against Plaintiff from occurring.

36. The actions of Defendant adversely affected the terms, conditions and privileges of employment

37. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her good faith reports.

38. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the anti-retaliation laws that protect Plaintiff.

39. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic harm, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged decreed, and declared to be a violation of the rights secured to Plaintiff by state law.

b. That Defendant be required to make Plaintiff whole for its adverse, discriminatory actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c. That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

d. That Plaintiff be reinstated to her job or, in the alternative, be awarded front pay and monetary value of any employment benefits she would have been entitled as an employee for Defendant.

e. That Plaintiff be awarded compensatory damages in an amount in excess of $50,000.00 as established at trial.

  f. That the Court award Plaintiff her attorney's fees, costs and disbursements pursuant to state statute.

  g. That Plaintiff be awarded treble damages as permitted under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.*

  h. That the Court grant such other and further as it deems fair and equitable.

Dated this 6th day of March 2014.    BAILLON THOME JOZWIAK
                 & WANTA LLP

                 */s/*
                 Joni M. Thome, #232087
                 Christopher D. Jozwiak, #386797
                 Matthew S. Nolan, #390132
                 222 South Ninth Street, Suite 2955
                 Minneapolis, MN 55402
                 Telephone: 612.252.3570

                 *Attorneys for Plaintiff*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. §549.21 to the party against whom the allegations in this pleading are asserted.

Dated this 6th day of March 2014.

_____
Matthew S. Nolan, #390132

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                                    FOUTH JUDICIAL DISTRICT

---

Monica Martinson,

                              Plaintiff,                    Court File No. _____

v.                                                    **AFFIDAVIT OF SERVICE**
                                                              **(VIA HAND DELIVERY)**

ABM Parking Services, Inc.,

                              Defendant.

---

STATE OF MINNESOTA   )
                              ) ss.
COUNTY OF HENNEPIN  )

Jeremy Reichenberger, being first duly sworn on oath, states that on the 7th of March 2014 he served upon above-referenced Defendant the following documents:

1. Complaint and Jury Demand
2. Summons

☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Minneapolis, Minnesota addressed as set forth below. Minn. R. Civ. P. 5.02(a)

☒   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below on this date before the close of normal business hours. Minn. R. Civ. P. 5.02(a)

☐   by filing the foregoing with the Clerk of Court using the E-file and E-Service system, which will send notification of such filing to the e-mail addresses denoted on the service contact list. Minn. R. Civ. P. 5.02(b)

☐   by transmitting via facsimile, with no transmission errors reported, the document(s) listed above at the fax number(s) set forth below. Minn. R. Civ. P. 5.02(a)

1

<u>Served by Personal Service to:</u>
ABM Parking Services, Inc.
CT Corporation
100 S 5th St. #1075
Minneapolis, MN 55402

*Jeremy Reichenberger*

Subscribed and sworn to before me this 7th day of March 2014.

*Notary Public*

AIMEE K. JACOBSON
Notary Public
State of Minnesota
My Commission Expires
January 31, 2019

2