UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| MONICA MARTINSON, | Case No. 14-CV-0870 (PJS/SER) |
| Plaintiff, | |
| v. | ORDER |
| ABM PARKING SERVICES, INC., | |
| Defendant. | |

---

Joni M. Thome, BAILLON THOME JOZWIAK & WANTA LLP, for plaintiff.

Gregory L. Peters & Corie J. Tarara, SEATON, PETERS & REVNEW, PA, for defendant.

Plaintiff Monica Martinson brought this action against her former employer, defendant ABM Parking Services, Inc. ("ABM"), alleging that she was terminated because of her age, because of her disability, and because she engaged in protected activity—all in violation of the Minnesota Human Rights Act ("MHRA"). Minn. Stat. §§ 363A.01 et seq. ABM has moved for summary judgment. For the reasons that follow, ABM's motion is granted as to Martinson's reprisal claim, but denied as to her age- and disability-discrimination claims.

# I. BACKGROUND

ABM manages parking facilities throughout the United States, including the parking facilities at the Minneapolis-St. Paul International Airport. ABM manages the parking facilities at the airport pursuant to a contract with the Metropolitan Airports Commission ("MAC").

Martinson worked for ABM at the airport in various positions from 2004 until June 2013. *See* Martinson Dep. at 100; ECF No. 40-1 at 28. In August 2010, Martinson suffered a stroke and took several months off to recuperate. Martinson Dep. at 34-37, 151. After Martinson returned to work in early 2011, some of her co-workers—including Greg Frankhauser—complained that she was having trouble with her memory. *Id.* at 39-40; *see also* ECF No. 40-1 at 89.

At roughly the same time, ABM assigned some of Martinson's duties to other employees. Martinson Dep. at 130, 146-47. Martinson complained to human resources and then-general manager James Horski about her duties being taken away and questioned whether ABM's decision was related to her stroke. *Id.* at 151-56. During the conversation with Horski, Martinson also complained of age discrimination because ABM had recently paid bonuses to two younger employees in a different department but not to Martinson or any of the workers in her department (who were older than the two employees who had received bonuses). *Id.* at 166-71.

Martinson's job duties continued to change over the next two years; essentially, she went from performing mainly payroll duties to serving as an administrative assistant. *See id.* at 141-45, 174-76, 256. In January 2013, Martinson again complained to the general manager—now Frankhauser—about her duties being taken away. Martinson also told Frankhauser that the reassignment of job duties seemed discriminatory. *Id.* at 172-73. (ABM has argued that Martinson's job duties were being changed because the airport parking facility in general—and the payroll functions in particular—were being automated. *See* ECF No. 36-13 at 2-6.)

In 2012, MAC hired Lumin Advisors ("Lumin") to conduct an audit of ABM's operation of the airport parking facilities. *See* ECF No. 36-6. Lumin finalized its audit in February 2013 and recommended (among other things) that Martinson's position and one other position be eliminated. *See* ECF No. 36-2 at 18-20. On April 12, 2013, MAC informed Frankhauser of the results of the audit and directed him to eliminate the two positions. Frankhauser Dep. at 28, 57-58. Frankhauser asked MAC if he could transfer Martinson and the other employee to other positions. *Id.* at 58-59. He was told that he could transfer them as long as they filled open positions; Frankhauser was forbidden to create new positions to accommodate the two employees. *Id.*

Frankhauser started looking for open positions in early May, but he testified that nothing was available at that time. *Id.* at 26, 28, 31, 60. It appears, however, that there

were at least two open shift-manager positions for which Martinson was qualified. *See* ECF No. 40-1 at 19; Frankhauser Dep. at 140-141. In fact, ABM was interviewing for these positions at the time that Martinson was terminated. Frankhauser Dep. at 178-182. According to Martinson, instead of interviewing her for an open position, Frankhauser encouraged her to retire. Martinson Dep. at 172-74.

On June 4, 2013, ABM terminated Martinson and the other employee whose position was eliminated. ECF No. 40-1 at 28. Martinson and her terminated co-worker were the two oldest employees in the office. After Martinson was terminated, Frankhauser continued to look for positions for her within ABM. *See* Frankhauser Dep. at 145. Frankhauser testified that he notified Martinson of two positions at an ABM facility in downtown Minneapolis. *Id.* at 23-26. But Martinson testified that Frankhauser forwarded only a single job posting to her, and the deadline to apply for that job had expired weeks earlier. *See* Martinson Dep. at 82-85; Frankhauser Dep. at 181-82; ECF No. 41-1 at 82-83. After Frankhauser was notified that Martinson had retained counsel and was accusing ABM of unlawful discrimination, Frankhauser testified that his efforts to find a position for her "[came] to a screeching halt." Frankhauser Dep. at 145.

II. ANALYSIS

Martinson brings three claims against ABM. First, Martinson claims that ABM discriminated against her on the basis of age, in violation of Minn. Stat. § 363A.08, subd. 2. Second, Martinson claims that ABM discriminated against her on the basis of disability, also in violation of Minn. Stat. § 363A.08, subd. 2. Finally, Martinson claims that ABM retaliated against her after she opposed practices forbidden by the MHRA, in violation of Minn. Stat. § 363A.15(1). ABM moves for summary judgment on all of Martinson's claims.

*A. Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

*B. Age Discrimination*

Martinson claims that ABM discriminated against her on the basis of age in violation of the MHRA. *See* Minn. Stat. § 363A.08, subd. 2. For the reasons explained on the record at the hearing on ABM's motion, the Court concludes that there is sufficient evidence for a jury to find that Martinson was discriminated against on the basis of age. Therefore, ABM's motion for summary judgment on Martinson's age-discrimination claim is denied.

*C. Disability Discrimination*

Martinson also claims that ABM discriminated against her on the basis of disability in violation of the MHRA. *See* Minn. Stat. § 363A.08, subd. 2. This claim appears to be quite weak. But the disability-discrimination claim is closely tied to the age-discrimination claim, and trying the disability-discrimination claim along with the age-discrimination claim would add little to the length or the expense of the trial. For that reason, and for the reasons explained on the record at the hearing on ABM's motion, the Court denies ABM's motion for summary judgment on Martinson's disability-discrimination claim.

*D. Reprisal*

Martinson argues that ABM retaliated against her in two ways. First, Martinson argues that ABM terminated her because she complained about age and disability

discrimination.  Second, Martinson argues that Frankhauser halted his efforts to find a new job for her after she hired a lawyer and accused ABM of discrimination.

The MHRA prohibits employers from "intentionally engag[ing] in any reprisal against any person because that person . . . opposed a practice forbidden under [the MHRA] . . . ."  Minn. Stat. § 363A.15.  "To make a prima facie retaliation claim under the MHRA, a plaintiff 'must establish the following elements: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two.'"  *Fischer v. Minneapolis Pub. Sch.*, No. 14-2245, 2015 WL 4099847, at *5 (8th Cir. July 8, 2015) (quoting *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010)).

If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action . . . ."  *Macias Soto v. Core Mark Int'l, Inc.*, 521 F.3d 837, 841 (8th Cir. 2008).  "If the defendant advances a legitimate reason for the termination, the plaintiff bears the burden of demonstrating the defendant's stated reason is a pretext for retaliation."  *Id.*  Ultimately, the "burden of persuasion remains with the plaintiff to show the termination was motivated by intentional retaliation."  *Id.*

1. Termination

Martinson does not argue that ABM acted unlawfully in eliminating her *position*. That concession is wise; the record is clear that Lumin recommended to MAC that Martinson's position be eliminated and that, based on that recommendation, MAC ordered ABM to eliminate the position. There is no evidence that Lumin's recommendation—or MAC's acceptance of Lumin's recommendation—had anything to do with Martinson's age, disability, or protected conduct.

Martinson argues, though, that just because ABM had to eliminate her *position* does not mean that ABM had to fire *her*; it could, for example, have fired another employee and given Martinson that employee's position, or it could have hired Martinson to fill an open position. Martinson argues that ABM decided to fire her in retaliation for her earlier complaints about discrimination. As noted above, Martinson complained of discrimination on two occasions. First, in early 2011, Martinson complained of discrimination to human resources and then-general manager Horski. Second, in January 2013, Martinson complained of discrimination to general manager Frankhauser.

To prove a causal connection between her complaints of discrimination and her firing—that is, to establish the third element of her prima facie case—Martinson primarily relies on what she characterizes as the close temporal proximity of the events.

"The causal connection requirement may be satisfied 'by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time.'" *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn. 1995) (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 445 (Minn. 1983)). "Generally, however, 'more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.'" *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)).

"Where timing is suggested as proof of causation, the time between an employee[']s complaint and the employer[']s action must be 'very close.'" *Spencer v. State, Dep't of Corr.*, No. A07-0462, 2008 WL 668259, at *10 (Minn. Ct. App. Mar. 11, 2008) (unpublished) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (two to three months between complaint and adverse employment actions was insufficient to infer a causal connection); *see also*, *e.g.*, *Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 859-60 (8th Cir. 1998) ("a few days" is sufficient for causation); *Hubbard*, 330 N.W.2d at 445 (two days is sufficient for retaliatory motive); *Potter v. Ernst & Young, LLP*, 622 N.W.2d 141, 145-46 (Minn. Ct. App. 2001) ("less than three months after [plaintiff's] complaint," is sufficient, where there is other evidence of retaliatory intent).

Martinson's firing was not "very close" to her complaints of discrimination. Martinson was terminated in June 2013. Her first complaint of discrimination (to Horski) occurred in early 2011, over *two years* earlier. To the Court's knowledge, neither the Eighth Circuit nor any Minnesota appellate court has ever held that the fact that an adverse action followed protected conduct by "only" two years is sufficient to establish causation. Martinson has failed to establish a causal connection between her 2011 complaint of discrimination and her 2013 firing.

Martinson's second complaint of discrimination (to Frankhauser) occurred in January 2013, *five months* before she was fired. Again, the Court is unaware of any decision of the Eighth Circuit or a Minnesota appellate court that holds that a gap of "only" five months between protected activity and adverse action is sufficient to establish causation. No other evidence in the record suggests that Frankhauser was motivated by animosity of any kind toward Martinson, much less animosity connected to her complaint five months earlier.[1] To the contrary, there is no hint that Frankhauser planned to fire Martinson or take any other action against her until he was forced to

---

[1]Martinson asserts, without elaboration, that Frankhauser's retaliatory intent is evidenced by his failure to consider her for other positions. Pl.'s Br. 26. This is insufficient to connect Frankhauser's actions (or failure to act) to Martinson's protected activity or to demonstrate retaliatory animus. *See Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 976 (8th Cir. 2012) (holding that an employer's explanation for its adverse employment action must be "pretext for *unlawful discrimination*, not . . . merely false in some way" (quoting *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1017 (8th Cir. 2005))).

eliminate her position by MAC. Upon being informed that he had to eliminate Martinson's position, Frankhauser asked MAC if he could transfer Martinson to another job—and, after he fired Martinson, he made at least some effort to find a position for her within ABM. None of this suggests personal animosity toward Martinson.

In sum, Martinson's claim that ABM fired her in retaliation for her complaints of discrimination fails because Martinson cannot establish a causal connection between the adverse action and any protected activity.

### 2. Cessation of Efforts to Find New Employment

Frankhauser admits that he stopped his efforts to find a job for Martinson after he learned that she had hired an attorney and accused ABM of discrimination. This, Martinson argues, violated the MHRA. According to Martinson, her hiring a lawyer and bringing a claim of discrimination were activities that were protected by the MHRA, and Frankhauser was retaliating against her for engaging in those activities when he stopped looking for a job for her.

Martinson's claim fails because she cannot establish that Frankhauser's cessation of his voluntary efforts to look for a job for her constituted a materially adverse action for purposes of the MHRA. "An employee suffers a materially adverse employment action in the context of a MHRA retaliation claim when the employer engages in conduct that would dissuade a reasonable employee from making a discrimination

claim." *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011). Post-employment retaliation has been found actionable where, for example, the former employee had recall rights or had applied for a job and was not rehired. *See, e.g.*, *Fischer v. Minneapolis Pub. Sch.*, No. 14-2245, 2015 WL 4099847, at *1, *5 (8th Cir. July 8, 2015) (former employee was eligible for recall); *Maynard v. Motors Mgmt. Corp.*, No. 05-CV-1089, 2006 WL 2530354, at *5, *11 (D. Minn. Aug. 31, 2006) (former employee applied for a position but was not rehired).

This is not such a case, however. Martinson had no recall rights, and she never applied for a position with ABM after she was terminated. This is a case, rather, in which Martinson's supervisor—acting entirely of his own volition, and simply as a favor to Martinson—kept his eye out for a job opening that might interest her. Martinson has not cited (and the Court has not found) any judicial decision extending the notion of post-employment retaliation to cover this type of case. This Court is unwilling to do so.

Again, Frankhauser's efforts to look for another position at ABM that might interest Martinson were entirely voluntary. Frankhauser had no obligation to help Martinson after she had been fired, and Martinson had no right to that assistance. If supervisors could be held liable to former employees under these circumstances, the

result would not be to curtail retaliation, but to curtail voluntary efforts by supervisors to help their former employees.

Moreover, Martinson herself has insisted that Frankhauser's efforts were useless to her. She says that he passed along only one job posting, and he did so only after the deadline to apply for that position had expired. Obviously, the cessation of *useless* attempts to help a former employee to find a position would not dissuade that employee from hiring an attorney and making a discrimination claim—and thus such a cessation does not constitute materially adverse action for purposes of the MHRA.

Finally, the Court notes that Frankhauser halted his efforts to find Martinson a job after he was told that Martinson had hired a lawyer and was accusing *him* of acting unlawfully in firing her. Under those circumstances, a supervisor in Frankhauser's position will almost always be instructed by his employer and his attorney not to have any further contact with the former employee. The Court doubts very much that the MHRA was intended to force a supervisor to continue to do favors for a former employee who has hired a lawyer and sued or threatened to sue him.

In any event, because Martinson did not suffer a materially adverse action for purposes of the MHRA when Frankhauser discontinued his voluntary (and ineffective) efforts to help her find a job, Martinson's retaliation claim must be dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for summary judgment [ECF No. 33] is GRANTED IN PART AND DENIED IN PART as follows:

1. Defendant's motion for summary judgment on plaintiff's age-discrimination claim is DENIED.

2. Defendant's motion for summary judgment on plaintiff's disability-discrimination claim is DENIED.

3. Defendant's motion for summary judgment on plaintiff's reprisal claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE AND ON THE MERITS.

Dated: August 13, 2015         s/Patrick J. Schiltz
                               Patrick J. Schiltz
                               United States District Judge